UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12460-RCL

ROBERT PARSONS

    Plaintiff

v.

VERIZON BELL ATLANTIC

    Defendants

**DEFENDANT VERIZON COMMUNICATIONS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND FOR FEES AND COSTS**

**INTRODUCTION**

Plaintiff Robert Parsons ("Parsons"), a former technician for Verizon's local subsidiary, New England Telephone, alleges that Verizon refused to rehire him to his former position on the basis of his age and/or a disability in violation of Mass. Gen. Laws ch. 151B. He presents no evidence that the job was open, that he was considered for it, or, speculating that he was considered and rejected, why he was rejected. Instead, he offers only a return receipt showing that he sent an unsolicited resume to Verizon in June of 2001. He included no cover letter and identified no open position for which he was applying. He asks the Court to infer from these circumstances that Verizon violated the law.

The lack of evidence to support his claim is matched by his lack of effort to determine whether there was any evidence. He took virtually no discovery in this case. After he initially filed a charge with the Massachusetts Commission Against Discrimination ("MCAD"), he rebuffed all efforts to understand his claim. Verizon was left to guess when and how Parsons

FHBOSTON/1154454.1

had applied for the job he was allegedly denied. His MCAD charge placed the date of discrimination in November, 2000 rather than June 2001. Although Verizon told him on numerous occasions that it could locate no record of an application and requested that he provide some detail, he did not do so until June of 2004 when he apparently found the return receipt and attached it to his resume.

Whatever evidentiary trail there might have been having gone cold because of Parsons' delay, he now asks this Court to infer discrimination from a return receipt. To do so, the Court would have to infer that the resume reached and was considered by an unknown decisionmaker who knew that Parsons was a person with a handicap the age of forty, who understood that he was applying for an available position for which he was qualified and who decided not offer the job to Parsons because of his handicap or age. This is too great an inferential leap from one return receipt.

The inadequacy of Parsons' evidence reveals that his claim was frivolous. Further, Parsons' lack of effort in litigating this case demonstrates that he knew it was frivolous. For these reasons, the Court should grant summary judgment to Verizon and award Verizon its reasonable counsel fees and expenses against Parsons for pursuing this frivolous complaint.

## STATEMENT OF MATERIAL FACTS[1]

Parsons was employed by New England Telephone from 1971 until he retired in 1998. Exhibit[2] A, Deposition of Robert Parsons, Volume I and II, November 11, 2004 and November 15, 2004 ("Parsons Depo. Vol.") at 7, 15-16, 21. For the last two years of his employment he

---

[1] Any allegation or testimony of the plaintiff cited herein is accepted as true for purposes of the instant motion only, as required by summary judgment standard. The defendant specifically reserves its right to contest the accuracy of any or all of the plaintiff's allegations and/or testimony at trial.

[2] Unless otherwise stated, all Exhibits are attached to the accompanying Affidavit of Christopher Powell.

worked as a central office technician in the facility at 7 Elm Street in Malden, removing obsolete equipment. Parsons Depo. Vol. I at 11-12. In 1998, as a result of carpal tunnel problems as well as full-body edema, Parsons retired and took a disability pension. Parsons Depo. Vol. I at 14-16. In November 2000, his benefits were terminated as a result of a medical examination in which he was found to be no longer totally disabled. Parsons Depo. Vol. I at 33.[3]

After Parsons' benefits were terminated, he faxed materials concerning his claim that he should have been on a service pension to a Verizon executive named Lea Davies ("Davies"). Exhibit B, January 8, 2001 letter from Parsons to Davies; Parsons Depo. Vol. I at 30-31. In response to this fax, Davies called him sometime in early January 2001 and spoke to him about his pension.[4] Parsons Depo. Vol I at 33. In a second telephone conversation a few days later, Davies told Parsons that the records showed he was on a disability pension. Parsons Depo. Vol. I at 34. Parsons said that if that was the case, then he wanted his job back, to which Davies responded that he would have to contact the employment department. Parsons Depo. Vol. I at 34. Parsons identified Davies as a woman. Parsons Depo. Vol. I at 6. But Davies is a man. Affidavit of Steven Taber ("Taber Aff.") ¶ 7.

Parsons alleges that he sent his resume to the attention of the "Former Employee Dept." in the "Verizon Recruiting Dept" at 125 High Street, Boston sometime in February 2001 and then again on June 18, 2001. Parsons Depo. Vol. I at 57. A U.S. Mail return receipt shows that some mailing sent to that address on June 18 was received the following day. Parsons Depo. Vol. I at 60-61; Exhibit C, Certified Mail Receipt and Parsons' Resume. There is no return

---

[3] On review, the Verizon Claims Review Committee upheld the termination of benefits. Parsons did not appeal this determination. Regardless, the instant suit solely concerns allegations that Verizon discriminatorily refused to rehire Parsons in 2001.

[4] Verizon does not believe any conversation between Davies and Parsons took place for several reasons, most notably the fact that Parsons has consistently identified Davies as a woman, when he is in fact a man. However, for the purposes of summary judgment only, Verizon accepts Parsons' story in this regard as true.

receipt evidencing the alleged February mailing. Parsons Depo. Vol. I at 61. Parsons claims that he also emailed the resume to Verizon. Parsons Depo. Vol. I at 57, Parsons Depo. Vol. II at 94-95. Verizon's staffing office in Boston has no record that the resume was received and given any consideration. Taber Aff. ¶ 4. Because of the volume of resumes it receives, the Boston office routinely discards unsolicited resumes. Taber Aff. ¶ 6. As noted below, Parsons discovered the June certified mail receipt only after Verizon had been requesting details concerning his alleged application for two and one-half years.

Assuming the resume was received, there is little reason to conclude from it that Parsons was seeking a return to his former job. Parsons included no cover letter with his resume. Parsons Depo. Vol. I at 62. The resume itself offers only the statement, "Objective Return to work" to explain for what position Parsons was applying. Exhibit C. The only indication it offers that Parsons' disability benefits had been terminated is the statement, "Disability pension August 1998 to present." Parsons Depo. Vol. I at 63; Exhibit C.

Before sending his resume, Parsons made no attempt to determine whether his old job was available. He did not contact his former supervisor, nor anyone else at his former place of employment. Parsons Depo. Vol. I at 67-68. He had no first-hand knowledge whether Verizon was hiring technicians in his former job category. Parsons Depo. Vol. I at 68. He thinks a job might have been available for him based on a newspaper article about an arbitrator's award that appeared in 2003, Parsons Depo. Vol. I at 64-65, and rumors that Verizon was employing temporary employees in some unspecified positions. Parsons Depo. Vol. I at 65-67. As of the end of 2000, Verizon had far too many employees in the New England area. Affidavit of Donald B. Coughlin ("Coughlin Aff.") ¶ 6. It was not hiring COTs at the time Parsons allegedly applied

in February or June of 2001. Coughlin Aff. ¶ 6. In fact, Verizon had not posted a vacancy for an outside candidate in two years. Coughlin Aff. ¶ 5.

Parsons believes Verizon discriminated against him on the basis of a disability because, in his words, he had never seen Verizon "make accommodations for anyone." Parsons Depo. Vol. I at 69. As his only example he cited the case of one employee, a Richard Hertz, who had been moved from his job as a toll tester technician to a desk job when he broke his back and began using a wheelchair. Parsons Depo. Vol. I at 69-70. He could identify no other examples of employees whose disabilities, in his view, had not been accommodated. Parsons Depo. Vol. I at 70.

Parsons' explanation for why he believes Verizon discriminated against him on the basis of his age was no more intelligible. He stated that "it would behoove the company to hire younger employee (sic) because of less benefits, less pay in the longer term employment." Parsons Depo. Vol. I at 68. As further evidence, he cited Verizon's practice of offering early retirement packages. Parsons Depo. Vol. I at 69.

Having received no response from Verizon by August 6, 2001, Parsons filed a charge of discrimination with the MCAD. Exhibit D, MCAD Charge. His charge placed the date of discrimination as November 17, 2000, <u>preceding</u> his alleged applications for employment. Id. In its response to his charge, Verizon notified Parsons as early as October 3, 2001, that his allegations concerning his application for employment were so vague that Verizon could not fully investigate them. Exhibit E, Verizon's Statement of Position to the MCAD. Verizon requested that Parsons supply specific actions he had taken to apply for employment. <u>Id.</u> Verizon repeated that request in January, 2004 after Parsons brought this lawsuit. Exhibit F, letter from Christopher Powell to James Tewhey dated January 23, 2004. Verizon repeated its

request numerous times over the next several months. Exhibits G-K, five letters from Christopher Powell to James Tewhey dated February 12, 2004, February 26, 2004 March 10, 2004, March 11, 2004 and June 4, 2004. But it was not until June 22, 2004 that Parsons finally provided the return receipt dated June 19, 2001, which he claims accompanied his resume. Exhibit L, fax from James Tewhey to Christopher Powell dated June 23, 2004.

## ARGUMENT

### I. Summary Judgment

Given the state of the record, Verizon emphasizes that it need not prove a negative to get summary judgment. As the party seeking summary judgment, Verizon need only inform the district court of the basis for its motion, and identify those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Verizon need not present affirmative evidence "negating the [plaintiff's] claim." Id. (emphasis in original). In fact, in Celotex the Supreme Court reasoned:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial.

Id. at 322. Here, because Parsons cannot demonstrate that there is evidence to support a finding in his favor on multiple elements as to which he bears the burdens of production and proof Verizon is entitled to summary judgment.

Like federal courts in Title VII cases, Massachusetts courts apply the familiar McDonnell-Douglas inferential method in discrimination cases where, as here, there is no direct evidence of discrimination. See Tate v. Department of Mental Health, 645 N.E.2d 1159, 1163

(Mass. 1995). Thus, Parsons must first establish a prima facie case of discrimination, to which Verizon then might respond with a legitimate, non-discriminatory reason for not hiring him. Id. Once Verizon did this, then Parsons would have to establish both that the proffered reason was mere pretext for discrimination and, ultimately, that Verizon chose not to hire him because of discriminatory animus. Id.

Although most cases deal with later stages of the McDonnell-Douglas approach, on the record before this Court Parsons cannot establish a prima facie case of discrimination on the basis of handicap or age. Even if he could, he cannot overcome Verizon's legitimate, nondiscriminatory reasons for not hiring him. For these reasons, Verizon is entitled to summary judgment.

A. Parsons cannot establish a prima facie case of employment discrimination.

While the details vary depending on the type of discrimination alleged, to establish a prima facie case of unlawful employment discrimination, Parsons generally must present credible evidence that (1) he is a member of a protected class; (2) he applied for an open position; (3) Verizon refused to hire him; and (4) that Verizon sought to or did fill the position with a similarly qualified individual. See Chief Justice for Admin. & Mgmt. of the Trial Ct. v. Massachusetts Comm'n Against Discrimination, 791 N.E.2d 316, 320 (Mass. 2003). To meet his burden here, Parsons must provide more than a scintilla of evidence, rather he must provide evidence that would allow a reasonable jury to find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Because Parsons fails to offer more than a scintilla of evidence as to the second element of his prima facie burden, and none whatsoever as to the third and fourth elements, Verizon is entitled to summary judgment.

The evidence that Parsons applied for a job does not quite weigh a scintilla. There is only his testimony that he mailed and emailed his resume in February and June, and one return receipt

demonstrating that, on June 19, <u>something</u> was received at Verizon's offices at 125 High Street, Boston. No evidence corroborates his claims that he mailed his resume in February, or that he ever emailed his resume.

But even if that is a scintilla, Parsons has adduced <u>no</u> evidence that his application was considered by someone at Verizon who declined to hire him. This may be because of Parsons' delay in providing any detail as to his alleged application for rehire. Had he provided such information in October 2001, a mere four months after he claims to have applied, Verizon might have been able to locate someone who had at least seen his resume. By waiting two and one-half years to provide any information, Parsons made it impossible for Verizon to do so. But no matter the cause, given the absence of any record that any responsible person at Verizon actually received or considered his resume, no reasonable jury could find that Parsons applied to return to his old job and that Verizon refused to hire him.

Nor has Parsons produced any evidence that the job he sought was available, much less that it remained open after he applied. Instead, the only evidence before the Court shows that Verizon was not hiring outside candidates into COT positions in the Boston area in 2001. Parsons admitted at his deposition that before submitting his resume, he had made no effort to determine whether the job he sought was available. He did not contact his former manager, or anyone else working at his former reporting location. The two reasons he offered as to why he thinks a job was available are not competent evidence. First, he suggested that perhaps as late as 2003 he had read something about an arbitrator's award requiring Verizon to hire some people. Second, he thought he had heard a rumor that Verizon had hired some temporary employees. None of this would permit a reasonable jury to find that a COT position was available, nor that his specific COT position in the Malden location was available.

Finally, there is no evidence in the record to suggest that a hypothetical decisionmaker at Verizon was motivated by Parsons' handicap or age, or that he or she was even aware of them. The reasons offered by Parsons as to why he believes Verizon discriminated against him are insufficient as a matter of law to support such an inference. His suggestion that hiring younger employees is less expensive is speculation. His suggestion that Verizon's practice of offering early retirement packages from time to time is evidence of age discrimination is contrary to settled law. See Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993) (offers for early retirement are not themselves evidence of age discrimination). And his story about the technician who was moved to a desk job after he injured his back and began using a wheelchair is more an indication of Verizon's practice of accommodating people with handicaps than the contrary.

Thus, Verizon is entitled to summary judgment, because no reasonable jury could find that a job was available for Parsons, that he applied, that he was rejected because of his age and/or handicap, and that the job remained open, merely on the strength of one return receipt.

## II. Costs and Attorney's Fees

Because the record demonstrates that Parsons' claim was frivolous and not advanced in good faith, the Court should award Verizon its reasonable counsel fees and other costs and expenses. In diversity cases like this one, the availability of attorney fees is determined by applicable state law. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 259 n.31 (1975); Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 273 (1st Cir. 1990). Under Massachusetts law, a court may award a party its "reasonable counsel fees and other costs and expenses incurred in defending against…claims" which the court finds "were wholly insubstantial, frivolous and not advanced in good faith." Mass. Gen. Laws ch. 231, § 6F. Where

it is clear neither plaintiff nor counsel have reason to believe that facts necessary to establishing a claim exist, such a finding is warranted. See Katz v. Savitzky, 413 N.E.2d 354, 357 (Mass. App. Ct. 1980). In Katz, the plaintiff brought a tortuous interference claim. Id. at 355. During his deposition, it became clear that at the time the complaint was filed, neither he nor his counsel had any reason to believe that the defendants were aware of the contractual relationship with which he alleged in the complaint that "defendants did intentionally interfere." Id. at 357.

Parsons' deposition testimony demonstrates that, when he filed his complaint, he had no reason to believe any of several facts necessary to his claim could be established. First, he had no reason to believe that anyone at Verizon had received and considered his resume. Verizon told him in October, 2001 when it responded to his MCAD charge that it had no record of his applying for a job. Rather than supply information to substantiate his claim that he had applied for a job, he waited two years and filed a civil complaint. Thus, at the time he filed his complaint he had been on notice for two years that it was unlikely that Verizon would be able to identify anyone who had considered his application. Accordingly, he had no reason to believe he could establish that someone at Verizon denied him a job because of his age and or handicap. Likewise, having made no effort prior to his alleged application to identify an available job for which he was applying, Parsons had no reason to believe he could establish that there was an available job that remained open after he was refused a job, or which Verizon filled with another similarly qualified individual.

Parsons' knowledge of the merits of his claim is further supported by his failure to engage in meaningful discovery. Apparently understanding that he not only had no evidence, but that there was none to be had, he took no depositions. He ignored his discovery obligations for months, forcing Verizon's counsel to inquire repeatedly as to the status of his initial disclosures

and responses to Verizon's discovery requests. See Exhibits G-K. And, as described above, Parsons ignored Verizon's request for detail concerning his alleged application for more than two and one-half years from the filing of his MCAD charge, until June 2004 when he discovered the return receipt.

Accordingly, the Court should find that Parsons brought a wholly insubstantial claim in bad faith, and award Verizon its reasonable counsel fees and expenses in an amount to be determined.

VERIZON COMMUNICATIONS INC.

By its attorneys,

*/s/ Christopher Powell*

Arthur G. Telegen BBO # 494140
Christopher Powell BBO # 658884
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: January 28, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 1/28/05

FHBOSTON/1154454.1                    - 11 -