UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 22 P 12: 15

U.S. DISTRICT COURT
DISTRICT OF MASS.

ROBERT PARSONS            )
                          )
        Plaintiff         )       CIVIL ACTION NO. 03-12460-RCL
                          )
v.                        )
                          )
VERIZON BELL ATLANTIC     )
        Defendants        )

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION IN
OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION

    Plaintiff Robert Parsons, ("Parsons"), a former technician
for Verizon's local subsidiary, New England Telephone alleges
that Verizon refused to rehire him to his former position on the
basis of his age and/or a disability in violation of Mass. Gen.
Laws ch. 151B.

II.   STATEMENT OF FACT

    Parsons was employed by New England Telephone ("The
Company") from 1971 until he retired in 1998.  Parsons was first
employed as an outside installer and then as a toll tester.
(Exhibit 1, Deposition of Robert Parsons, Volume I and II,
November 11,2004 and November 15,2004 ("Parsons Depo. Vol.") at
Vol I, pp. 7-8)  His responsibilities included running wires,
operating test equipment and installing circuit boards.  (Exhibit
1, Vol I p. 8; Exhibit 2, Job Description.)  In 1997, Parsons

1

sustained bilateral carpal tunnel injuries as a result of his work for the Company. (See Exhibit 3, Lump Sum Settlement Agreement, Department of Industrial Accidents, dated March 4, 1999.) The Company accepted liability for the injuries. (*Id.*) Parsons then went on the Company's Long Term Disability program. (Exhibit 1, Vol I p. 15.) The Company was self insured for the purposes of Workers Compensation Claims. (See Exhibit 3.) During the period of time that Parsons was out on a disability pension, the Company would periodically require Parsons to undergo examinations to determine if he was still disabled. (See Exhibit 4, Letter from Health Resources to Robert Parsons, Dated May 22, 2000.) The court will note that the letter specifically states that the Company is the party requesting the examination. (*Id.*) After one such appointment with a Dr. Bruce Leslie, the doctor determined that Parsons was able to return to work and so notified the Company. (Exhibit 1, Vol I p. 53; See also Exhibit 4)

Because Parsons was out of work for a period exceeding fifty-two weeks, he was retired from his employment with the Company. (See Exhibit 5, Affidavit of Myles Calvey; Exhibit 1, Vol I p. 21.)

With the aforementioned benefit change (the termination of retirement benefits), the Company was required to notify Parson's union so that the union and the company could work together to determine if there were positions available for Parsons to return to and to give the union the opportunity to assist the employee.

2

(Exhibit 5, ¶¶ 10-11.)  The company never notified the union of the change in Parsons' status.  (Id. at ¶ 12.)

Parsons' responsibility at this point was to notify the company that he wished to return to work.  (Id at ¶ 9.)  There does not appear to be a specific procedure as to how this notification is to be accomplished.  Parsons contacted a number of individuals at the Company after he was declared fit to work. One such individual was Lee Davies, Vice President of Human Resources. (See Exhibit 6, Letter to Davies dates January 8, 2001 from Parsons and fax cover sheet: Exhibit 1, Vol I pp. 30-31.)[1] Parsons also talked to Davies by phone on two occasions.  (Id at 33-34.)  Davies informed Parsons that he needed to reapply for a position with the Company and that he should contact the employment department.  (Exhibit 1, Vol I pp. 34-55.)  Parsons e-mailed and mailed his resume to the Employment Department in accordance with the instruction he received from a recording at said department.  (Exhibit 1, Vol I, p.56-57; Exhibit 7, Resume and Return Receipt.)

The Company was required to give preference to former employees like Parsons when rehiring or hiring for any positions for which that employee might be eligible.  (See Exhibit 5, ¶14.) The record is devoid of any evidence that the Company made any effort to consider Parsons for any position. (See Exhibit 5, ¶12) This despite the fact that during this entire period the company

[1] The Company seems to make much of the fact that Mr. Parsons misidentified Davies as a woman.  However, the Plaintiff points out that during the deposition the Company identified Davies as a woman.  See Exhibit 1, Vol I p. 30, 1 9 and 1 14.)

3

hired individuals into position for which Parsons would have been eligible. (See Exhibit 5, ¶15)

## III. STANDARD FOR SUMMARY JUDGMENT

Under Mass.R.Civ. P. 56(C), summary judgment should not be granted unless "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The moving party bears the burden of affirmatively demonstrating the absence of a triable issue of fact, and that it is entitled to judgment as a matter of law. *Pederson v. Time, Inc.* 404 Mass. 14, 16-17 (1989).

Where a moving party properly asserts that there is no genuine issue of material fact, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury *could* return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986). A judge's mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment. See *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir.1982); *American Int'l Group v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981). 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* s 2725, at 104-105 (1983). In assessing the record to determine whether there is a genuine issue of material fact, the court *must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.* (Emphasis added) See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986);

4

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). Thus, in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and Depositions must be viewed in the light most favorable to the party opposing the motion. See, e.g., *United States v. Diebold*, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989). The Court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. See *Mass.R.Civ.P. 56(c)*; *Colley v. Benson, Young & Downs Insurance Agency, Inc.*, 42 Mass.App.Ct. 527, 528, 678 N.E.2d 440 (1997); see also *Kelley v. Rossi*, 395 Mass. 659, 663, 481 N.E.2d 1340 (1985). In cases "where notice, intent, or state of mind questions are at issue" summary judgment is often, but not always, inappropriate. See *Brunner v. Stone & Webster Engineering Corp.*, 413 Mass. 698, 705, 603 N.E.2d 206 (1992)

a. <u>STANDARD FOR SUMMARY JUDGMENT IN EMPLOYMENT DISCRIMINATION CASES</u>.

The Supreme Judicial Court of Massachusetts, in cases alleging employment discrimination, under G.L. 151B, follows the three-stage order of proof as set forth by the United States Supreme Court under the Federal anti-discrimination provisions of Title VII." *Wheelock College v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 134-136 (1976).

In the first stage, the plaintiff has the burden to show by a preponderance of the evidence a prima facie case of discrimination.  The elements of the plaintiff's initial burden may vary depending on the specific facts of a case. *Id.*  The prima facie case "eliminates the most common non-discriminatory reasons for the plaintiff's rejection, thereby creating a presumption of discrimination." *Blare v. Husky Injection Molding Systems Boston Inc. & Another*, 419 Mass. 437, 441 (1995).

In the second stage, the employer can refute the presumption created by the prima facie case by articulating a nondiscriminatory reason for what it has done. *Wheelock College*, 371 Mass. at 136, quoting *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[A]n employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons advanced were the real reasons." *Wheelock College*, 371 Mass. at 138.  "If the defendant fails to meet its burden, however, then the presumption created by the preponderance of the evidence supporting a prima facie case entitles plaintiff to judgment." *Blare*, 419 Mass. at 442.

Once the defendant articulates a nondiscriminatory reason for the challenged action, the proceedings have reached the third stage in the order of proof.  "[O]nce a plaintiff has established a prima facie case and further shows either that the employer's articulated reasons are pretext or by direct evidence that the actual motivation was discrimination, the plaintiff is entitled

to recovery for illegal discrimination under M.G.L c. 151B." Id. at 444, quoting *Wheelock College*, 371 Mass. at 138.

The phrase "pretext for discrimination" in the context of G.L. 151B does not imply that the plaintiff must prove not only that a reason given by the employer for the adverse decision was false, but that the reason was given to cover a discriminatory animus. See *Abramian v. President & Fellows of Harvard College*, 432 Mass. at 118. Cf. *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997).

Rather, if a Plaintiff presents sufficient evidence from which a reasonable jury could find that at least one of the Defendant's reasons was false then from this the fact finder properly could infer that the Plaintiff was not promoted because of unlawful discrimination. See *Abramian v. President & Fellows of Harvard College,* 432 Mass. 107, 118, (2000.)  See also *Lipchitz v Raytheon Company* 434 Mass 493 498 (2001)

In an indirect evidence case, if the fact finder is persuaded that one or more of the employer's reasons is false, it may (but need not) infer that the employer is covering up a discriminatory intent, motive or state of mind. Id at 501.  See also *Riffelmacher v. Police Comm'rs of Springfield*, 27 Mass. App. Ct. 159, 165 (1989).

The Plaintiff is required to prove that a causal link exists between the Defendant's alleged discriminatory behavior and the adverse employment action alleged.  *Lipchitz* at 501.

However, to meet his burden of proof that discrimination was the determinative cause of the adverse employment decision, Parsons is not required to disprove every reason articulated by the Defendant or suggested in the evidence. *Lipchitz* at 506-507. See also *Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass.* at 9. He could meet his burden by persuading the fact finder that it was more likely than not that at least one reason was false. From such proof, the fact finder could infer that discriminatory animus was the determinative cause of the adverse employment decision. *Lipchitz v Raytheon Company* at 507.

Finally, "The ultimate issue of discrimination, raised by the parties' conflicting evidence as to the defendant's motive, is not for a court to decide on the basis of briefs and transcripts, but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses." *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 445, 646 N.E.2d 111 (1995). See *Dartt v. Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. 1, 16, 691 N.E.2d 526 (1998).

ARGUMENT

(i)     Reasonable Jury Could Conclude That Plaintiff is a
        "Qualified Handicapped Person"

The elements of a claim of handicap discrimination are: First, that the plaintiff is a member of the protected class-- that is, that he is a qualified handicapped person within the meaning of G.L.c. 151B. Under c. 151B, § 1(17) the term

8

"handicap" means, "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; (c) or being regarded as having such impairment." Major life activity is defined in §1(20) as "functions, including, but not limited to, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See generally, *City of New Bedford v. Massachusetts Commission Against Discrimination,* 440 Mass. 450, 461-66, 799 N.E.2d 578 (2003); *Labonte v. Hutchins & Wheeler,* 424 Mass. 813, 821, 678 N.E.2d 853 (1997). The impairment must be long-lasting or chronic; a temporary disability of short duration does not qualify. See *Hallgren v. Integrated Financial Corporation,* 42 Mass.App.Ct. 686, 687-89, 679 N.E.2d 259 (1997). Where the claimed impairment is alleged to limit the major life activity of working, the plaintiff must show that his condition significantly restricts him from performing not only a particular job, but "a class of jobs or a broad range of jobs in various classes." *City of New Bedford, supra,* at 464. These requirements apply not only to the first prong of the definition, but to the "record of" and "regarded as" prongs as well; thus, to establish membership in the protected class based on those prongs, a plaintiff must show that he has a record of having a long-term impairment that substantially limited his participation in a major life activity, or that his employer regarded him as having such a condition. See *City of New Bedford, supra,* at 462.

Clearly, a reasonable jury could conclude that Plaintiff's condition substantially limited a major life activity or that his employer regarded him as having such impairment. In *Dartt v. Browning-Ferris Indus., Inc.*, 427 Mass. 1, 691 N.E.2d 526, 536 n.30 (Mass. 1998), the plaintiff was unable to work for more than two years while he was undergoing two operations for work-related injuries. *691 N.E.2d at 536*. This "slight" evidence, the Supreme Judicial Court ruled, was sufficient for a jury to conclude that the plaintiff was "regarded" by his employer as having a substantially limiting impairment pursuant to the traditional analysis of a handicap discrimination action. *Id.* (citing *Mass. Gen. L. ch. 151B, §1(17)*). Therefore, Parsons has produced sufficient evidence that he was handicapped or that he was regarded as handicapped by his employer.

(ii) . Exception: Section 75B(1)

Even if the court were to determine that the plaintiff's physical impairments do not constitute a handicap within the traditional definition of the term, the plaintiff may rely on an expanded definition of "qualified handicapped person" derived from the M.G.L. c151 §75B. According to section 75B(1) of chapter 152, "any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions

of chapter [151B]." Mass. Gen. L. ch. 151, § 75B(1). Having sustained a work-related injury and being capable of performing the essential functions of his job, the plaintiff asserts, he is automatically "deemed" by section 75B(1) to be a qualified handicapped person for purposes of chapter 151B.

The Massachusetts Appeals Court found that an employee injured at work, who would have been able to perform her job with reasonable accommodation for her injury, could be considered a "qualified handicapped person" as traditionally defined by *Mass. Gen. L. ch. 151B, § 1(16)*. *Everett Indus., Inc. v. Mass. Comm'n Against Discrimination* 49 Mass. App. Ct. 1116, 735 N.E.2d 1271, 2000 WL 1476321, at 5 (Mass. App. Ct. June 29, 2000). Furthermore, the court stated, the employee "is presumed to be a qualified handicapped person pursuant to §75B(1)." *Id.* at 5 n.13. The Appeals Court thereby implied that section 75B(1) ought to be read so as to deem individuals suffering work related injuries, without more, to be qualified handicapped persons under 151B, at least for the period of time that their status under the workers compensation law can fairly be read to influence their treatment by others. See also *GILMAN v. C&S WHOLESALE GROCERS, INC* 170 F.Supp. 2d 77; 2001 U.S. Dist. LEXIS 16163 (2001). While the language of §75B(1) is similar to that used in chapter 151B, §1(16), it is different in one important respect. Unlike section 1(16), section 75B(1) states that workers injured on the job "shall be deemed to be" qualified handicapped persons under chapter 151B. It contains no words which even imply that the

11

injury must *also* "substantially impair[] a major life activity.". The state legislature may well have assumed that an injury sufficient to qualify an individual for workers compensation was sufficient to impair that person's ability to "work," one aspect of a major life activity.

Moreover, several appellate decisions which mention section 75B(1) affirm that it may provide an expanded definition for the term "qualified handicapped person." *See Dartt*, 691 N.E.2d at 536 n.30; *Hallgren*, 679 N.E.2d at 258 n.2. This is true as well for *Everett*, 49 Mass. App. Ct. 1116, 735 N.E.2d 1271, 2000 WL 1476321, at *5 n.13 (discussing section 75B(1) as a "further[]" basis for relief under which the plaintiff would be "presumed to be a qualified handicapped person").

Several Superior Court decisions also affirm this point. *(See, e.g., Piderit v. Siegal & Sons Investments, Ltd.*, 1998 Mass. Super. LEXIS 575, 1998 WL 1181187, at *3 (Mass. Super. Ct. Aug. 19, 1998) (citing section 75B(1) and stating that "discrimination against an injured but qualified worker on account of his workplace injury is unlawful handicap discrimination"); *Zarrella v. City of Everett*, 1996 Mass. Super. LEXIS 467, 1996 WL 1186938, at *2 and n.2 (Mass. Super Ct. May 1, 1996) (holding that section 75B(1) "expands the definition of 'qualified handicapped person' to certain employees injured on the job"; "otherwise, a 'handicapped person' is defined as any person who has 'a physical or mental impairment which substantially limits one or more major life activities of a person[,]' *G.L.c. 151B*, § 1(17) and (19)");

*Belonni v. Reservoir Nursing Ctr.*, 1994 Mass. Super. LEXIS 345, 1994 WL 879457, at *4 (Mass. Super. Ct. Jan. 18, 1994) (holding that where evidence suggested plaintiff injured on the job was not totally disabled, claim under section 75B(1) survived summary judgment). *See also Rowe v. Town of N. Reading,* 2001 Mass. Super. LEXIS 38, 2001 WL 170655, at *6 n.2 (Mass. Super. Ct. Jan. 5, 2001) (dismissing section 75B(1) alternative definition where plaintiff not injured on the job). *But see Berghuis v. Univ. of Mass. Med. Ctr., 1998 WL 1182068,* at *3 (Mass. Super. Ct. Apr. 6, 1998) (stating that section 75B "contains language mirroring the definition of a qualified handicapped person in chapter 151B"). These decisions support Plaintiff's reading of the statutes.

Finally, Plaintiff points out, guidelines published by the Massachusetts Commission Against Discrimination distinguish between "isolated medical problems . . . and illnesses of short duration [which] usually are not handicaps" under section 151B, and section 75B(1) which deems "individuals who suffer certain on-the-job injuries [as] handicapped individuals for purposes of ch. 151B."

In sum, a reasonable jury could conclude that Plaintiff "has sustained a work-related injury (See Exhibit 3) and is capable of performing the essential functions of [his] job." (See Exhibit 8; *Mass. Gen. L. ch. 152, §75B(1)*). Thus, the Plaintiff cannot be excluded as a matter of law from being a "qualified handicapped person" under chapter 151B.

Even though Plaintiff may be deemed to be a "qualified handicapped person," he must also prove at trial that Defendant terminated or otherwise discriminated against him "because of his handicap." *Mass. Gen. L. ch. 151B,* § *4(16).*

At the first stage of the *McDonnell Douglas* analysis, Plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *See Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 56 (1st Cir. 1999), *cert. denied,* 528 U.S. 1161, 145 L. Ed. 2d 1082, 120 S. Ct. 1174 (2000). This is easily met: Plaintiff, was a qualified handicapped individual at the time of the events at issue; he was able to perform the essential functions of his job with or without reasonable accommodation; (See Exhibit 8) he was not rehired by Defendant; and the position he had occupied remained open and Defendant sought to fill it. *See Dartt,* 691 N.E.2d at 528; See also Exhibit 5, ¶15.

At the second stage, the burden shifts to the Defendant to produce a valid, nondiscriminatory reason for the adverse employment action. *See Thomas,* 183 F.3d at 56. Here the defendant alleges that the Plaintiff never applied for a position with the company and therefore the company could not have discriminated against him and, further, even if the Plaintiff had applied for a position, there were none available for him. The Plaintiff argues that (i) he did apply to the Company for rehire (See Exhibit 7) and that there were positions available at the company, that he should have been given preference for said positions (See Exhibit 5) and that the company hired other

14

individuals into those positions. (See Exhibit 5, ¶15; See also

Exhibit 9, M.G.L. ch 151 §75B.)

Once the defendant articulates a nondiscriminatory reason

for the challenged action, the proceedings have reached the third

stage in the order of proof. At the third stage of the analysis,

the burden will shift back to Plaintiff to establish by a

preponderance of the evidence "that the legitimate reasons

offered by the defendant were not its true reasons, but were a

pretext for discrimination." Reeves, 530 U.S. at 143 (citation

and internal quotation marks omitted).

The phrase "pretext for discrimination" in the context of

G.L. 151B does not imply that the plaintiff must prove not only

that a reason given by the employer for the adverse decision was

false, but that the reason was given to cover a discriminatory

animus. See Abramian v. President & Fellows of Harvard College,

432 Mass. at 118. Cf. Matthews v. Ocean Spray Cranberries, Inc.,

426 Mass. 122, 128 (1997).

Rather, if a Plaintiff presents sufficient evidence from

which a reasonable jury could find that at least one of the

Defendant's reasons was false then from this the fact finder

properly could infer that the Plaintiff was not promoted because

of unlawful discrimination. See Abramian v. President & Fellows

of Harvard College, 432 Mass. 107, 118, (2000.) See also

Lipchitz v Raytheon Company, 434 Mass 493 498 (2001)

In an indirect evidence case, if the fact finder is

persuaded that one or more of the employer's reasons is false, it

may (but need not) infer that the employer is covering up a
discriminatory intent, motive or state of mind. Id at 501.   See
also *Riffelmacher v. Police Comm'rs of Springfield,* 27 Mass. App.
Ct. 159, 165 (1989).

The Plaintiff is required to prove that a causal link
exists between the Defendant's alleged discriminatory behavior
and the adverse employment action alleged.  *Lipchitz* at 501.

However, to meet his burden of proof that discrimination was
the determinative cause of the adverse employment decision,
Parsons is not required to disprove every reason articulated by
the Defendant or suggested in the evidence. *Lipchitz* at 506-507.
See also *Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass.
at 9.* He could meet his burden by persuading the fact finder that
it was more likely than not that at least one reason was false.
From such proof, the fact finder could infer that discriminatory
animus was the determinative cause of the adverse employment
decision.  *Lipchitz v Raytheon Company* at 507.

Here the Plaintiff has provided evidence that he did apply
for a position with the company, that there were positions
available for which he was eligible and that he was not rehired
or even considered for those positions.  Given the above, a
reasonable fact finder could conclude that the reasons given by
the defendant are false and that impermissible discriminatory
animus was the reason for the refusal to rehire the Plaintiff.
Therefore, summary judgment cannot be granted to the Defendants.

II   Age Discrimination

To meet his burden of proof at trial on his claim of age discrimination, the plaintiff must present evidence from which the jury could find four elements: (1) that he was a member of the protected class, in that he was age forty or over; (2) that he was terminated or otherwise subjected to adverse employment action; (3) that the employer held an age-based discriminatory animus; and (4) that the discriminatory animus caused the adverse employment action. See *Lipchitz v. Raytheon Co.,* 434 Mass. 493, 506-08, 751 N.E.2d 360 (2001); *Abramian v. President & Fellows of Harvard College,* 432 Mass.107, 116-18, 731 N.E.2d 1075 (2002). In the absence of direct evidence as to the latter two elements, a plaintiff may prove those elements by inference, based on the three-stage analysis initiated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and adopted and applied in a series of Massachusetts cases, most recently in *Knight v. Avon Products, Inc.,* 438 Mass. 413, 420-27, 780 N.E.2d 1255 (2003).

Here, since the record provides no direct evidence of age discrimination, the plaintiff must proceed by way of the pretext analysis. The evidence clearly meets the first three elements of the *prima facie* case: the plaintiff was over the age of forty at all material times (See Compalint ¶3), he was the subject of an adverse job action, and he was performing acceptably and that he was "replaced by individuals younger than himself. (See Exhibit

5.)  Therefore, summary judgment cannot be granted to the defendants on this claim.

III  Attorney Fees

In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.  Moreover, Federal Courts have consistently adhered to this principal and absent a specific statute of an enforceable contract, litigants pay tyheir own attorney's fees. See *Day v. Woodworth*, 13 How. 363 (1852); *Oelrichs v. Spain*, 15 Wall. 211 (1872); *Flanders v. Tweed*, 15 Wall. 450 (1873); *Stewart v. Sonneborn*, 98 U.S. 187 (1879); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717-718 (1967); *F. D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 126-131 (1974).

There are exceptions to this rule.  Courts may assess attorneys' fees for the "willful disobedience of a court order... as part of the fine to be levied on the defendant, *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426-428 (1923)," *Fleischmann Distilling Corp. v. Maier Brewing Co.*, supra, at 718; or when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." *F. D. Rich Co.*, 417 U.S., at 129 (citing *Vaughan v. Atkinson*, 369 U.S. 527 (1962)); cf. *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946). These exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in

particular situations, unless forbidden by Congress, but none of the exceptions is involved here.

Here the Plaintiff had certain benefits terminated by the Defendant. The Plaintiff then made numerous attempts to contact various individuals in the Company to obtain information as to why said benefits were terminated or, in the alternative, to return to work. (See Exhibit 1, pp. 4-52.) During the course of litigation the Plaintiff produced over two hundred pages documents to the Defendant[2], filed document requests of the defendants and submitted to a deposition. The defendants now complain that they are unable to find documents that they themselves had a responsibility to keep (See Exhibit 5) and this serves as the basis for seeking fees from the Plaintiff. The Plaintiff respectfully suggests that such a requests does not fit into any of the exceptions to the rule that each party pays their own fees.

IV.   CONCLUSION:

For all of the above reasons, the plaintiff respectfully requests that this honorable court deny the Defendant's Motion for Summary Judgment.

---

[2] The delay in responding to the initial discovery requirements was due to the fact that this attorney was hospitalized for a period of seven (7) weeks shortly after the filing of the case in Federal Court

Respectfully Submitted
Robert Parsons by his attorney

*James R. Tewhey*

James R. Tewhey
BBO 634810
19 North Street
Salem, MA  01970
(978) 741-2255

Date: 2/22/05

## CERTIFICATE OF SERVICE

I, James R. Tewhey, attorney for the plaintiff hereby
certify that a copy of the attached document was delivered
by ~~first class~~ mail, ~~postage prepaid~~, on   2/22/05
to all attorney/s of record.

*James R. Tewhey*

James R. Tewhey

20